UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

Mary M. HOFFMAN,

                              Plaintiff,

        v.

Nancy A. BERRYHILL, Acting
Commissioner of Social Security,

                              Defendant.

Case No.: 16-cv-1976-JM-AGS

**REPORT AND RECOMMENDATION
ON SUMMARY JUDGMENT
MOTIONS (ECF Nos. 12 & 15)**

In this Social Security appeal, plaintiff alleges that the Administrative Law Judge erroneously found her mental impairments to be non-severe and improperly disregarded her surgeon's opinion about her physical ailments. Although the ALJ made some errors, they were harmless. The decision to deny plaintiff's disability-benefits application should, therefore, be affirmed.

## BACKGROUND

At Step Two of the five-step disability evaluation process, the ALJ ruled that plaintiff Mary Hoffman had various severe physical impairments—joint disease, a spine disorder, reconstructive joint surgery, and obesity—but that her depression and anxiety were not severe. (AR 20.) At Step Four, the ALJ evaluated Hoffman's residual functional capacity—that is, "the most [work she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). In this analysis, the ALJ gave "little weight" to the opinion of treating

1

orthopedic surgeon Dr. Norman Kane, who felt Hoffman was physically disabled. The judge instead found that she could still "perform the full range of sedentary work," thereby dooming her disability application. (*See* AR 23, 29.)

## DISCUSSION

### A. Mental Impairments

#### (1) *Step Two: Severity*

Hoffman first faults the ALJ for concluding that her depression and anxiety were not sufficiently severe to pass Step Two of the five-step evaluation process. This objection is inconsequential for a couple reasons. First, because the ALJ went on to "extensively discuss[]" Hoffman's mental impairments "at Step 4 of the analysis," any error in "neglecting to list [those impairments as severe] at Step 2 . . . was harmless." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (citation omitted); (*see* AR 25-28). Second, even at Step Two, Hoffman doesn't challenge the ALJ's "Paragraph B" conclusion that she had at most "mild" mental-health limitations and no episodes of decompensation (AR 21), which the regulations warn will "generally" lead to a finding that an "impairment[] is not severe." 20 C.F.R. § 404.1520a(d)(1); *see Zueger v. Colvin*, No. C14-180-MJP-BAT, 2014 WL 3752124, at *7 (W.D. Wash. July 30, 2014) (holding that failing to contest an adverse Paragraph B decision renders other Step Two errors harmless); *Adams v. Astrue*, No. 11-cv-00477-MO, 2012 WL 1664815, at *3 (D. Or. May 10, 2012) (holding that Step Two error "was harmless" because the claimant's "mental impairments would still fail to satisfy the 'paragraph B' criteria").

#### (2) *Step Four: Residual Functional Capacity*

Perhaps because of these Step-Two harmless-error obstacles, Hoffman re-formulates her argument in her reply brief as a critique of the ALJ's Step-Four residual-function analysis, during which he allegedly "minimize[ed] Ms. Hoffman's mental impairments without adequate justification." (ECF No. 17, at 2.) Although this issue is arguably waived, the Court will address it. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) (holding that courts may not consider "an argument raised for the first time in a *reply* brief").

2

ALJs need only support their residual-function determination with "substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (citation omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008) (citation omitted).

Even accepting Hoffman's entire critique of the ALJ's reasoning, there was still "substantial evidence supporting the ALJ's decision" based on "all the other reasons given by the ALJ" for his "residual functional capacity," so any error is "harmless." *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). In fact, the ALJ gave several compelling reasons that Hoffman barely challenges: (1) Hoffman "did not receive specialized mental health treatment for over a year"; (2) "the State Agency program psychologists" both found her mental impairments were "nonsevere"; and (3) after "a comprehensive psychiatric evaluation," the examining psychiatrist found she was at most "mildly limited" and could "perform work activities on a consistent basis." (AR 21, 26.) Critically, nothing in the medical record rebuts the adverse opinions of these two consulting psychologists and the examining psychiatrist. And even on the first point, Hoffman merely notes that she received *non*-specialized mental health treatment during her year without a specialist visit. (ECF No. 12, at 15-16.) But this rebuttal side-steps the ALJ's argument: that the lack of specialized psychiatric care "suggests her mental symptoms were not significantly limiting and that treatment with medication prescribed by her primary care physician was sufficient to manage her symptoms." (AR 21.) So, even in their repackaged form, Hoffman's criticisms do not warrant reversal.

## B.    Treating Physician Rule

Next, Hoffman complains that the ALJ improperly rejected the uncontradicted opinion of her surgeon Dr. Kane. "If a treating physician's opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling

weight.'" *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citation omitted). When the treating physician's opinion is uncontradicted by any other doctor,[1] an ALJ may only reject it by stating "clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citations omitted). If the ALJ chooses not to give that opinion "controlling weight," the judge must decide what weight to give it after "consider[ing] all of the following factors":

- length of the treatment relationship and the frequency of examination;
- nature and extent of the treatment relationship;
- supportability (whether the medical opinion includes "supporting explanations" and "relevant evidence," particularly "medical signs and laboratory findings");
- consistency with the record as a whole;
- specialization (whether the opinion relates to the doctor's specialty); and
- any "other factors."

20 C.F.R. § 404.1527(c)(2)-(6).

### (1) *Failing to Explicitly Analyze All the Regulatory Factors*

In explaining his rejection of Dr. Kane's opinion, the ALJ did not *explicitly* analyze each of these § 404.1527(c) factors. The Ninth Circuit has never expressly held that an ALJ should. Yet that conclusion might seem implicit in the recent case of *Trevizo v. Berryhill*, 862 F.3d 987 (9th Cir. 2017), *pet. for rehrg. filed*, No. 15-16277 (9th Cir. Aug. 21, 2017), when the Court wrote:

> As the ALJ noted, Dr. Galhorta is Trevizo's "primary treating physician," having treated her at least 22 times between 2008 and 2012. . . .
>
> . . . . [T]he ALJ did not consider [§ 404.1527(c)] factors such as the length of the treating relationship[ and] the frequency of examination. . . . This failure alone constitutes reversible legal error.

---

[1] Although the Commissioner argues the opinion "is contradicted" (ECF No. 15-1, at 19 n.3), the ALJ "did not find that [Dr. Kane's] opinion was contradicted by any of the other physicians. We therefore treat [his] opinion as uncontradicted." *See Trevizo v. Berryhill*, 862 F.3d 987, 997-98 (9th Cir. 2017).

*Id.* at 997-98 (citation omitted). In other words, although it seems the ALJ "noted" a four-year treating relationship with 22 examinations, the *Trevizo* Court nonetheless found the ALJ did not "consider" that relationship's length and frequency. A reasonable reading of this language would be: When considering the regulatory factors, it is not enough to merely mention the relevant *facts*; ALJs must explicitly set forth their *analysis* of those facts. Because that holding would be dispositive here, this Court ordered the parties to submit additional briefing on *Trevizo*.

Hoffman endorses this very interpretation. She argues that the Ninth Circuit has long required express consideration of each regulatory factor and that *Trevizo* only "breaks new ground . . . in prescribing the appropriate remedy where an ALJ breaches that duty." (ECF No. 24, at 2-3.) But Hoffman cites only three cases in her briefing, and none of them hold that an ALJ must explicitly analyze each factor. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) ("The ALJ is required to *consider* the factors set out in 20 C.F.R. § 404.1527(c)(2)-(6). . . .") (citations omitted and emphasis added); *Orn*, 495 F.3d at 631 ("[T]he Administration *considers* specified factors. . . .") (emphasis added); *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) ("[T]he treating physician's opinion . . . must be *weighted* using all the factors provided in 20 [C.F.R.] § 404.1527.") (alterations and citations omitted; emphasis added).

The Commissioner, on the other hand, contends that many Ninth Circuit cases have affirmed treating-physician decisions that lacked such an explicit factor-by-factor analysis, and *Trevizo* cannot overrule such longstanding precedent. It is true that, absent intervening Supreme Court authority, one three-judge Ninth Circuit panel "cannot reconsider or overrule the decision of a prior panel." *United States v. Gay*, 967 F.2d 322, 327 (9th Cir. 1992) (citations omitted). And "[i]n determining whether it is bound by an earlier decision," courts must consider not merely "the letter of particular precedents," but also the "reason and spirit of cases," including "the facts giving rise to the dispute." *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001) (citation omitted). With these guiding principles in mind, it seems the Ninth Circuit has often considered similar "facts giving

5

rise to the dispute" and affirmed ALJs who did not reduce their evaluation of each regulatory factor to writing. *See, e.g.*, *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1221, 1227-28 (9th Cir. 2009) (affirming ALJ's decision to give treating physician's opinion "little weight" based on four reasons that did not address certain regulatory factors); *Magallanes v. Bowen*, 881 F.2d 747, 751-54 (9th Cir. 1989) (affirming ALJ's rejection of treating physician's opinion "based on the claimant's own testimony, and the opinions and evidence from" four other doctors, even though the ALJ's discussion did not cover all the regulatory factors). Yet it is not clear that this precise "dispute" has ever been squarely presented to the Ninth Circuit, and this Court is reluctant to infer holdings about issues that were not raised on appeal.

The Commissioner also argues that reading *Trevizo* to require "explicitly articulat[ed] findings" about each factor would conflict with Social Security regulations and rulings, as well as common practice. (ECF No. 23, at 2.) The regulations and rulings, in fact, contain no express-analysis-of-each-and-every-factor requirement. *See* 20 C.F.R. § 404.1527(c) ("[W]e *consider* all of the following factors. . . .") (emphasis added); *id.* at § 404.1527(c)(2) ("[W]e *apply* the factors" and "will always give good reasons . . . for the weight we give your treating source's medical opinion.") (emphasis added); S.S.R. 96-2p, *available at* 61 Fed. Reg. 34,490, 34,492 (July 2, 1996) (explaining that the ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight"). And the Commissioner points out that if the mandate to "consider" each factor really meant "expressly articulate the reasoning for," then the regulations would not need to also insist that ALJs set forth specific "reasons." *See Bilski v. Kappos*, 561 U.S. 593, 607-08 (2010) (holding that courts should avoid "interpreting any statutory provision in a manner that would render another provision superfluous") (citation omitted).

If the Ninth Circuit intended to effect such a sea change in treating-physician practice and procedure—requiring express factor-by-factor reasoning—one would expect the Court to expressly say so. While there is no law against appellate irony, it is hard to fathom that

6

the *Trevizo* Court chose an implicit holding to announce a new rule of explicit findings. This is especially true here since such a rule would contradict a straightforward reading of the relevant regulations. *Cf. Clark v. Martinez*, 543 U.S. 371, 380-81 (2005) ("[W]hen deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail. . . .").

Happily, *Trevizo* can be harmonized with the regulations, prior case law, and established practice. We must simply adopt a more restrictive—and less intuitive—reading of this sentence: "As the ALJ noted, *Dr. Galhorta is Trevizo's 'primary treating physician,'* having treated her at least 22 times between 2008 and 2012." 862 F.3d at 997 (emphasis added). This Court concludes that the phrase "As the ALJ noted" applies only to the main clause (italicized) and not to the remainder of the sentence. In other words, in *Trevizo* the ALJ failed to note the treating relationship's length or frequency, and also failed to demonstrate that those factors were otherwise considered, which was error. Interpreted thus, *Trevizo* does not demand a full-blown written analysis of all the regulatory factors; it merely requires some indication that the ALJ considered them.

Thus, the ALJ's failure to spell out his regulatory-factor rationale was not fatal here, as the record sufficiently shows he considered the necessary elements. (*See, e.g.*, AR 23-24 (setting forth facts relevant to regulatory factors, such as Dr. Kane's "orthopedist" specialty and years-long treatment relationship with Hoffman).)

**(2)** ***Reasons for Rejecting Dr. Kane's Opinion***

Turning to the merits, Hoffman argues the ALJ rejected Dr. Kane's opinion without clear and convincing reasons. The ALJ's four reasons are examined below.

(a) *Subjective Symptom Reporting*

First, the ALJ gave Dr. Kane's opinion "little weight" because he "relied quite heavily on [Hoffman's] subjective report of symptoms and limitations," and "seemed uncritically to accept as true most, if not all," of what Hoffman said, despite the fact that "there are good reasons for questioning the reliability of the claimant's subjective

7

complaints." (AR 26.) "If a treating provider's opinions are based to a large extent on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim*, 763 F.3d at 1162 (citation and quotation marks omitted).

Hoffman does not challenge the ALJ's finding that she was not credible; instead she focuses on whether Dr. Kane's opinion was based primarily on her self-reports or on clinical evidence. She points out that Dr. Kane "personally performed the most recent two surgeries on her right knee," which were prompted by the identification of "significant abnormalities on imaging studies, which were themselves corroborated by clinical findings." (ECF No. 12, at 15.) It is undeniable that Dr. Kane had access to many objective tests from which to draw conclusions, especially about Hoffman's knees and hips. (*See, e.g.*, AR 396-98 (noting various clinical dysfunctions); AR 400-01, 403 (gait observed); AR 406-07 (X-ray review); AR 409 (MRI review); AR 410 (physical exam and X-rays).) The problem is that while Dr. Kane may have had access to such evidence, he does not refer to any of it in his three written opinions. (*See* AR 374-75, 413-14, 695-702.) And some of the limitations Dr. Kane identified do not obviously correspond to any objective testing. (*See* AR 414 (noting restrictions on reaching, handling, fingering, and feeling); AR 700-01 (concluding that Hoffman was likely to miss work "[m]ore than three times a month" and could tolerate only "low stress" work).)

Even if another judge might reach a different outcome on this same record, it was rational for the ALJ to find that Dr. Kane relied too heavily on subjective complaints. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." (citation omitted)). This reason was clear and convincing, and supported by substantial evidence.

(b) *Unexplained Opinion Change—Cane Use*

The ALJ also discredited Dr. Kane because his "opinion regarding claimant's ability to ambulate changed significantly within two weeks." (AR 26.) On the April 18, 2013

8

medical source statement, Dr. Kane answered the question, "Does the patient use an assistive device?", by checking "No." (AR 374-75.) But twelve days later—on the April 30, 2013 statement—he marked "Yes" to the same question, writing that it was "medically necessary" for Hoffman to use a "Cane, when ambulating." (AR 413-14.) The ALJ pointed out that Dr. Kane "fail[ed] to provide an explanation of the evidence relied on in forming his [new] opinion," and that opinions lacking sufficient explanation or supporting evidence are entitled to less weight. (AR 26); *see Bayliss*, 427 F.3d at 1216 (holding that an unexplained "discrepancy" in a treating physician's "recorded observations and opinions regarding [a claimant's] capabilities" is a "clear and convincing reason for not relying on the doctor's opinion"); *Thomas*, 278 F.3d at 957 (holding that when "[t]he record contain[ed] no information to support" the treating doctor's change of opinion, the ALJ had a specific and legitimate reason for rejecting it).

Hoffman argues that "Dr. Kane did explain Ms. Hoffman's temporary use of a cane: She obtained it, without Dr. Kane having prescribed it, because she found it helpful for her pain and stiffness, symptoms that flowed from her objectively corroborated right knee osteoarthritis." (ECF No. 12, at 19.) But the ALJ found that this conclusion was "based almost entirely on claimant's subjective claim[s]," not objective medical evidence. (AR 26.) Of course, an alternative explanation for the change of opinion between April 18 and 30 is that Dr. Kane learned new information at an intervening appointment. (AR 414 ("Date last seen: 4/29/13").) At that appointment, in fact, Dr. Kane recorded a "10º of valgus to her right knee," which was an uptick from the "7º valgus deformity" last observed. (AR 396, 398.) Similarly, he noted that her knee's "range of motion is about 3 to 5º to 115º," a slight drop from her prior range of "0 to about 120º." (AR 396, 398.) But those same records also reflect increasing subjective complaints. (*Compare* AR 398 (On April 8, 2013: "Hoffman's right knee is not better. . . . She wants some pain pills. . . .") *with* AR 396 (On April 29, 2013: "She is very unhappy with the current state of her right knee.").) At any rate, in his medical source statements, Dr. Kane did not mention any of this evidence, let alone explain whether such slight variations were medically significant.

9

Without such clarification, the ALJ rationally interpreted Dr. Kane's change of opinion as unexplained or based primarily on subjective complaints, and properly discounted it.

(c) *Poorly Supported Opinion / Checkbox Forms*

Another reason the ALJ disregarded Dr. Kane's opinions was because of their very format: "[c]heck box forms that do not set forth explanations." (AR 26.) The Ninth Circuit has not spoken with complete clarity on the subject of checkbox or fill-in-the-blank forms. *Compare Trevizo*, 862 F.3d at 999 n.4 ("[T]he ALJ was not entitled to reject the responses of a treating physician" simply because "those responses were provided on a 'check-the-box' form, were not accompanied by comments, and did not indicate to the ALJ the basis for the physician's answers." (citation omitted)); *with Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("We have held that the ALJ may 'permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions.'" (alterations and citations omitted)).

The one thing that can safely be gleaned from this case law is that when a doctor provides little explanation for an opinion, ALJs may afford it less weight, even if they can't reject it altogether. On these forms, Dr. Kane provided no explanation for the limitations he checked off, other than conclusory diagnoses—no laboratory findings, no imaging studies, no objective medical evidence. (*See* AR 374-75, 413-14, 695-702.) Thus, the ALJ properly discounted his unexplained checkbox forms.

(d) *Opinion Contradicted by Hoffman's Own Statements*

Finally, the ALJ found that "Dr. Kane's opinions are inconsistent with [Hoffman's] own allegations that she was able to sit in a car for two hours and walk on uneven ground without any increase in pain." (AR 26; *see* AR 501.) Hoffman protests that the ALJ simply "cherry-pick[ed]" a single "treatment note indicative of some temporary improvement," which was not "reflective of the entire trajectory of her treatment course." (ECF No. 12, at 21; *see* AR 501.) The Commissioner does not address this argument, and the Court agrees with Hoffman. *See, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (cautioning against "selective" reading of "treatment notes" and noting that medical

improvements "must be read in context of the overall diagnostic picture"). For instance, the ALJ never mentions that days after that fateful car trip Hoffman was "not feeling well," and within a week of it her knee was already "achy." (AR 26, 499-500.) Ten months later, her condition deteriorated to the point that she was reportedly taking "1-2 oxycodone per day for the pain," without complete relief. (AR 543.) In light of her full treatment course, the ALJ erred in finding that Dr. Kane's opinions clashed with Hoffman's self-reported capabilities.

## C. Harmless Error Analysis

Because the ALJ relied on one invalid reason—and three valid ones—for doubting Dr. Kane's opinion, this Court must review for harmless error. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (holding that "harmless error analysis applies in the social security context," including in the area of a "treating source's medical opinion"); *see also Baily v. Colvin*, 659 F. App'x 413, 415 (9th Cir. 2016) ("Any error in the ALJ's additional reasons for rejecting [the treating physician's] opinions was harmless."). The three remaining reasons here were clear and convincing, and supported by substantial evidence in the record. Thus, any error was harmless. *Cf. Carmickle*, 533 F.3d at 1162-63 (holding two invalid reasons for an adverse credibility finding were harmless error in light of the remaining reasoning).

## CONCLUSION

The Court recommends that plaintiff's summary judgment motion (ECF No. 12) be **DENIED** and defendant's cross-motion for summary judgment (ECF No. 15) be **GRANTED**. The parties must file any objections to this report by September 7, 2017. *See* Fed. R. Civ. P. 72(b)(2). A party may respond to any objection within 14 days of receiving it. *Id.*

Dated: August 24, 2017

Hon. Andrew G. Schopler
United States Magistrate Judge